[Cite as *State v. Hammonds*, 2023-Ohio-2985.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

DESMONIQUE R. HAMMONDS,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 22 MA 0071

---

Criminal Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 21 CR 597

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Gina DeGenova,* Mahoning County Prosecutor*, Atty. Edward A. Czopur,* Assistant Mahoning County Prosecutor*,* Mahoning County Prosecutor's Office, 21 West Boardman Street, 6th Floor, Youngstown, Ohio 44503 for Plaintiff-Appellee and

*Atty. Donald K. Pond*, 567 E. Turkeyfoot Lake Road, Suite 107, Akron, Ohio 44319 for Defendant-Appellant.

Dated:  August 24, 2023

**Robb, J.**

{¶1} Defendant-Appellant Desmonique R. Hammonds appeals the sentence imposed by the Mahoning County Common Pleas Court for fourth-degree misdemeanor criminal trespassing after a bench trial on the greater offense of breaking and entering. She contends the court violated her right of allocution at sentencing and abused its discretion by sentencing her to a maximum thirty-day jail term (suspended with two years of community control). For the following reasons, the trial court's judgment is affirmed.

STATEMENT OF THE CASE

{¶2} On September 14, 2021, Appellant was arrested for breaking and entering, a fifth-degree felony, after she moved back to her former leased residence without the new owner's permission. (10/7/21 Ind.); R.C. 2911.13(A) (trespassing in an unoccupied structure by force, stealth, or deception with purpose to commit therein any theft offense or any felony). This occurred seven months after she was removed by a deputy sheriff who was executing a writ of possession issued in a foreclosure action against the former property owner.

{¶3} Appellant waived the right to a jury, and the case was later tried to the court. As the case presented against her by the state is pertinent to her sentencing arguments on appeal, we review the evidence from the bench trial.

{¶4} On May 23, 2019, the county treasurer filed a tax foreclosure case against Donald and Stephen Shetterly (and any unknown spouses) for owing over $30,000 in unpaid property taxes on 157 Newport Drive in Boardman Township. (Tr. 105-108); (St.Ex. 9). The owners were served at their residences in the State of Indiana. The treasurer also initially named as defendants any unknown tenants, occupants, or land contract vendees. Certified mail sent to any unknown residents at the property was returned as unclaimed on June 19, 2019, and regular mail was returned with a vacant property notation on July 30, 2019. (Tr. 109-110); (St.Ex. 13).[1]

---

[1] Counsel for the treasurer testified any unrecorded lessees or similar occupants were not necessary parties to a foreclosure action under Ohio law, but they initially name them as defendants in order to provide some notification. (Tr. 108, 144).

{¶5} A few days later, Appellant visited the treasurer's attorney and told him she was interested in buying the property. He said his office could send a reminder notice before the sheriff's sale if she wished to bid on it, and he subsequently did so as a courtesy. (Tr. 123). Because the property was vacant, the treasurer dismissed the unknown residents from the suit on August 29, 2019. (Tr. 110). On the same day, the treasurer filed a motion for default judgment, which was set for a hearing. (Tr. 112).

{¶6} On October 1, 2019, the court issued a foreclosure decree, which contained the following holding: "the doctrine of lis pendens attached to the property on May 23, 2019. Thus, all liens and interests filed for record after May 23, 2019 are forever barred." (Tr. 113-114); (St.Ex. 10). At trial, the treasurer's attorney pointed out this meant any post-complaint lease (such as the one a detective discovered after Appellant's arrest) would be ineffective against a new owner. (Tr. 131-132).

{¶7} In November 2019, Appellant returned to the office of the treasurer's attorney asking for a quitclaim deed and then leaving in an upset state. She did not claim to be a tenant at either visit. (Tr. 149).

{¶8} On August 18, 2020, the property sold for $151,000 at a sheriff's sale to Portage Banc LLC of Kent, Ohio through its statutory agent and owner Jitendra Kapasi. (Tr. 118-119, 193). The sale was confirmed in a September 23, 2020 judgment wherein the purchaser was granted a writ of possession. (Tr. 119); (St.Ex. 11). The sheriff's deed was recorded on December 7, 2020. (Tr. 121); (St.Ex. 12).

{¶9} A deputy sheriff then received a writ of possession from the court with orders to "remove any and all persons" from the property and deliver the property to the new owner. The deputy posted notice at the property on December 30, 2020, providing thirty days to any interested person to vacate the premises. (Tr. 40). The deputy was unable to attend to the matter on January 30, 2021 (the deadline in the notice).

{¶10} On February 3, 2021, Appellant emailed an internal affairs investigator at the sheriff's office. Noting the January 30 date, she complained the deputy failed to give her a "three day notice" and no eviction action was filed against her in "the municipal court of [M]ahoning [County]." (Tr. 82). Over the phone, this investigator advised Appellant the only way to stop the process was through court proceedings. (Tr. 84).

Case No. 22 MA 0071

{¶11} The next day at 4:15 p.m., Appellant filed a pro se letter (with no case caption), which was electronically filed in the common pleas court action. She asked to "stop the eviction" and listed the foreclosure case number in the body of the letter. (Tr. 51); (St.Ex. 14). The deputy executed the writ on February 5, 2021, while wearing a body camera (which was played for the court). (Tr. 42).

{¶12} Appellant told the deputy about her motion. He waited while she made numerous phone calls, including to the court. He too called the court and then proceeded with the order to remove the occupants, providing Appellant time to pack her belongings. (Tr. 45-46). When he emphasized she would not be allowed back on the property for any reason without court permission, Appellant specifically acknowledged this would constitute trespassing. (Tr. 46, 56); (St.Ex. 5).

{¶13} On February 8, 2021, a magistrate's order addressed Appellant's letter by stating, "the Court has no pending eviction proceedings and therefore, the Court lacks jurisdiction and the matter is considered moot." (Tr. 68, 125); (St.Ex. 14). Appellant filed another letter (again with no case caption but with the case number in the body), wherein she seemingly sought to contest the sheriff's sale. A magistrate's order found her filing untimely. (Tr. 126-127); (St.Ex. 14).

{¶14} Appellant then made complaints against the deputy and various departments. (Tr. 57). For instance, she filed a complaint at the Boardman Police Department on February 13, 2021. (Tr. 92). In doing so, she acknowledged receiving the notice posted on the property (while complaining no eviction action was filed against her). (Tr. 93).

{¶15} After the writ of possession was executed, an agent of the new property owner changed the locks and looked around the house with police officers and the owner. (Tr. 159, 197). Sometime thereafter, the agent stopped to check on the property and noticed someone broke in through the back door. (Tr. 160-161). While there, he heard Appellant speaking to the police about vehicles and heard her claim the authorities were conspiring against her. (Tr. 161,169).

{¶16} The property owner testified he was cited by the police for the condition of the property, including multiple cars left at the property. He believed Appellant would be removing them after showing title to the police who would tow the remainder. (Tr. 207).

**{¶17}** On April 11, 2021, Appellant complained to a Boardman police officer about the sheriff's office executing the writ of possession. She also asked about entering the property to retrieve forgotten items. When the officer advised she would be subject to arrest for criminal trespass if she showed up at the property without a court order, she replied, "Well, you guys are going to have to arrest me." (Tr. 95-97).

**{¶18}** A few days later, she asked the owner if she could rent the house for $250 per month and make repairs; she made higher offers later. (Tr. 208-209). He did not respond to her, testifying the rent offer was extremely low, the house was "trashed," and she had threatened him over the phone in the past. (Tr. 211).

**{¶19}** On September 13, 2021, Appellant met a locksmith at the house. She pulled up in a limousine and told the locksmith she locked her keys inside her house. As the property address matched her driver's license and a piece of mail she possessed, the locksmith let her in. When asked if she wanted an extra key made, she said she would be installing new locks she purchased at a store. (Tr. 23-26).

**{¶20}** The next day, a neighbor called the property owner to report Appellant's limo was parked at the property and all the lights were on in the house. (Tr. 162, 175, 187). The owner's agent went to the property and called the Boardman police. (Tr. 164, 174). When Appellant refused to answer the door, the officers called their supervisor. (Tr. 184). The supervisor spoke to the property owner on the phone and confirmed Appellant did not have permission to be on the property. (Tr. 180). The supervisor remembered previously escorting Appellant to the property to retrieve a vehicle she left behind. (Tr. 186).

**{¶21}** When she finally responded to the officers' requests, Appellant claimed she had possession of the home and the right to be there. She showed police the locksmith's receipt and an online reconnection receipt from the water department; both receipts were dated the prior day. (Tr. 177-178); (St.Ex. 1, 22).

**{¶22}** Appellant was arrested for breaking and entering; her children were retrieved from the house by her mother. (Tr. 181, 188). The supervisor testified it appeared Appellant intended to take up residence in the home, noting she deprived the owner of access to his property. The owner's agent looked through the house after

Appellant's arrest and confirmed it looked as if she had been cleaning the floors and moving back in. (Tr. 164).

**{¶23}** A detective subsequently investigating the case subpoenaed records from the water department. He learned the property owner paid the final bill, opened a new account in his name, and turned the water off. (Tr. 221-222). However, Appellant was able to have the water reconnected in her name on September 13, 2021 by presenting her driver's license with the property address and a lease. This document purported to be a five-year lease signed by herself and the foreclosure defendant Don Shetterly on August 30, 2019 (i.e., Appellant would have entered the lease after the foreclosure action was filed and after meeting with the treasurer's attorney about buying the property). (Tr. 138, 220-224); (St.Ex. 22).[2]

**{¶24}** After considering the preceding evidence and the arguments on the breaking and entering element involving purpose to commit a theft offense, the trial judge found Appellant guilty of the lesser included offense of criminal trespass. *See* R.C. 2911.21(A)(1) (knowingly enter or remain on the land or premises of another without privilege to do so), (D)(1) (a fourth-degree misdemeanor).

**{¶25}** The court imposed a suspended thirty-day jail sentence with three days of jail time credit and imposed two years of supervised community control with orders to have no contact with the property or its owner. At the sentencing hearing, the judge noted he would eliminate her probation after it seemed she was settled into a stable residence with no intent to return to the property at issue. (Tr. 262). Appellant filed a timely notice of appeal from the June 3, 2022 sentencing order.

ASSIGNMENT OF ERROR ONE: ALLOCUTION

**{¶26}** Appellant sets forth two assignments of error, the first of which contends:

"The trial court erred by denying Defendant-Appellant the right of allocution prior to the imposition of sentence, contrary to the Ohio Rules of Criminal Procedure – Crim. R. 32(A)(1)."

---

[2] The copy of the lease shows a notary seal and notary signature under the lease parties' signatures, but there was no notarial certificate (stating the signatures were acknowledged before the notary in a certain county on a specific date). The detective spoke to former owner Don Shetterly (who lived in Indiana) in a recorded phone call; he was uncertain if he signed a lease but said he never received any payments (even though the lease required an advance payment of the rent and a security deposit). (Tr. 227-228); (St.Ex. 23).

{¶27} Pursuant to Crim.R. 32(A)(1), the sentencing court shall not only give defense counsel an opportunity to speak on behalf of the defendant but shall also "address the defendant personally and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment." The trial judge must carefully adhere to the affirmative obligation to offer the right of allocution provided in Crim.R.32(A)(1). *State v. Green*, 90 Ohio St.3d 352, 359-360, 738 N.E.2d 1208 (2000) (remanding where the court's invitation to speak only seemed to refer to two non-capital counts, as this undercut the constitutional reliability of the death sentence). "A Crim.R. 32 inquiry is much more than an empty ritual: it represents a defendant's last opportunity to plead his case or express remorse." *Id.*

{¶28} Here, the parties agreed to proceed immediately to sentencing after the trial judge rendered the finding of guilt on the lesser included offense of criminal trespass. The state expressed no opinion on a jail term but asked for community control for a long enough period to ensure Appellant did not return to the property. Defense counsel pointed out Appellant already spent three days in jail, which he described as "a pretty stiff sentence for a fourth degree misdemeanor." He opined Appellant had been punished enough and no further punishment was necessary. (Tr. 260).[3] Defense counsel then immediately stated, "If she be given an opportunity to allocute - - do you have anything you wish to say?" (Tr. 260-261).

{¶29} At this point, the court reporter interrupted the proceedings, and the prosecutor asked, "Is she saying something, or is she deciding if she wants to say something." The court then clarified, "I think she's telling [her attorney] to say it. Her stuff is still there, I think." A discussion was then held off the record. Immediately upon returning to the record and without invitation to speak, defense counsel announced, "And we don't have anything else to say."

{¶30} The court then personally addressed Appellant, commenting on the need to ensure "you" have a place to live with "your" children and would no longer keep returning to the property. (Tr. 261). The court inquired, "I understand you have somewhere to live now?" (Tr. 261-262). When Appellant responded in the negative, the court said it would try to help her find somewhere to live, noting that it cannot be at the property at issue.

---

[3] Contrary to the state's argument, the sentence was not jointly recommended.

**{¶31}** The court then imposed the sentence of 30 days suspended with three days credit and community control of two years. After noting the community control could be eliminated upon a showing of stable housing (to confirm the lack of intent to return to the property), the court asked the attorneys to attend a meeting with the court where they would find Appellant stable housing. The court also asked Appellant if that was okay, but she did not answer then or when the court prompted, "Yes, no?" (Tr. 263).

**{¶32}** Ordinarily a trial court error is waived by failing to object, which leaves an appellant to invoke the plain error doctrine under Crim.R. 52(B). However, the absolute right to allocution in Crim.R. 32(A)(1) is not forfeited due to a defendant's mere lack of objection to the court's error in failing to comply with its affirmative duty under the rule. *State v. Campbell*, 90 Ohio St.3d 320, 325, 738 N.E.2d 1178 (2000). Nevertheless, the right to allocution can be waived by a failure to respond after the court invites the defendant to speak. *Id.*

**{¶33}** Working backward, Appellant's last failures to respond to invitations to speak were post-sentence and unrelated to allocution as they related to a future method to eliminate community control. The court's presentence question on housing was a personal invitation to speak on a specific topic relevant to the court's sentencing decision but did not ask whether Appellant wished to make a statement on her own behalf or present any information in mitigation of punishment. When the court personally addresses the defendant for allocution, "the exact language employed by the rule is not required; however, the invitation to speak should not be ambiguous." *State v. Masson*, 2017-Ohio-7705, 96 N.E.3d 1225, ¶ 10 (7th Dist.), citing *State v. Roach*, 7th Dist. Belmont No. 15 BE 0031, 2016-Ohio-4656, ¶ 11 (citing examples from other cases).

**{¶34}** Nevertheless, the focus is on the earlier questioning of Appellant as to whether she wanted to speak when the topic of her exercising or waiving allocution was discussed in her presence by all participants (with her whispering her answers to defense counsel). This situation is distinguishable from the initial holding in *Campbell* where the Supreme Court made the following observations:

> no evidence exists that the defendant knew he had a right to personally
> address the court prior to sentencing. Had the trial court strictly complied
> with Crim.R. 32(A)(1), the record would affirmatively show that Campbell

had indeed known of that right, thereby allowing him to choose whether to exercise it or not. But were we to find waiver in this case, where the record of the sentencing hearing is silent as to the right of allocution, we would in effect be sanctioning a finding of waiver in every case in which the trial court failed to comply with the duty imposed by the rule.

*Campbell*, 90 Ohio St.3d at 325 (noting the rule would also be applied to non-capital cases). *See also Masson*, 2017-Ohio-7705 at ¶ 10 (the rights under the rule also apply to misdemeanor cases).

{¶35} Here, the court afforded defense counsel the opportunity to speak after the prosecutor, as required by the first part of Crim.R. 32(A)(1). At the end of defense counsel's sentencing argument and before the court could speak, defense counsel immediately interjected himself into the court's role, specifically announcing his client's "opportunity to allocate." He then immediately took it upon himself to ask his client, "do you have anything you wish to say?" (Tr. 260-261). There was a question by the prosecutor (and the court reporter) as to whether Appellant was in the midst of allocuting or whether she was conferring with counsel to decide whether to say something as they could not clearly hear her. The court, however, appeared to understand that she was telling her attorney she wanted him to speak for her and heard her instruct her attorney to say she left belongings at the home in which she trespassed. After an off-the-record discussion, defense counsel again interjected himself as the opener of the record by announcing, "we don't have anything else to say." (Tr. 261). The court nevertheless personally requested Appellant answer a question the court viewed as relevant to its sentencing decision.

{¶36} Appellant had a clear "opportunity for allocution at the sentencing hearing" and chose not to speak on the record when pressed (and later answered a specific question relevant to sentencing). *See State v. Jackson*, 150 Ohio St.3d 362, 2016-Ohio-8127, 81 N.E.3d 1237, ¶ 15 (requiring resentencing "if an offender is not given an opportunity for allocution at the sentencing hearing * * * absent invited or harmless error"). Additionally, as Appellant acknowledges, a trial court's failure to be the one to voice the personal offer of the chance to make a statement in mitigation at sentencing does not result in automatic reversal for resentencing. If the error was invited or harmless,

resentencing is not required. *Jackson*, 150 Ohio St.3d 362 at ¶ 15; *Green*, 90 Ohio St.3d at 359; *Campbell*, 90 Ohio St.3d at 324-326. Under the doctrine of invited error, a defendant will not be allowed to benefit from an error induced by the defense or for which the defense was actively responsible. *Campbell*, 90 Ohio St.3d at 324. Invited error is more than mere acquiescence by the defense but involves the defense's suggestion, request, or affirmative consent to a procedure. *Id.* Under the circumstances reviewed above, any error in performing the affirmative court obligation on allocution was invited by the defense.

**{¶37}** Alternatively, as to harmless error under Crim.R. 52(A): "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." More specifically, "a trial court's failure to address the defendant at sentencing is not prejudicial in every case." *Campbell*, 90 Ohio St.3d at 325 (finding the error was not harmless error in the particular capital case where the defendant did not have an opportunity to make a personal appeal for his life), distinguishing *State v. Reynolds*, 80 Ohio St.3d 670, 684, 687 N.E.2d 1358 (1998) (where the court found the error was harmless in a capital case). "[T]he information conveyed to the court by defense counsel is pertinent in evaluating harmless error." *Masson*, 2017-Ohio-7705 at ¶ 10, citing *Roach*, 7th Dist. No. 15 BE 0031 at ¶ 17-19.

**{¶38}** Here, sentencing took place immediately after the bench trial. Minutes before the sentence, defense counsel had just argued how confused Appellant was by the legal proceedings regarding the property foreclosure, her eviction, her five-year lease, and her rights. The court knew Appellant and her children were displaced from the home and expressed concern while offering to actively participate in finding her stable housing. Defense counsel opined the three days she already spent in jail after her arrest would be a stiff and sufficient sentence for a misdemeanor of the fourth degree. She was invited to speak by her counsel, and she refused to do so except through him, but she thereafter answered the court's question on a topic the court expressed was important to sentencing in the context of her situation. The court imposed community control while noting an intent to eliminate this obligation upon Appellant's entry into stable housing to show she abandoned her obsession with the property at issue. Considering all of the circumstances (including the analysis in the next assignment of error), any error under Crim.R. 32(A)(1)

was harmless. For the various reasons expressed supra, Appellant's first assignment of error is overruled.

<u>ASSIGNMENT OF ERROR TWO: MAXIMUM JAIL TERM</u>

**{¶39}** Appellant's second assignment of error contends:

"The trial court erred by imposing a maximum suspended sentence upon Defendant-Appellant, contrary to the statutory provisions for misdemeanor sentencing."

**{¶40}** "The overriding purposes of misdemeanor sentencing are to protect the public from future crime by the offender and others and to punish the offender." R.C. 2929.21(A). These purposes are achieved by considering "the impact of the offense upon the victim and the need for changing the offender's behavior, rehabilitating the offender, and making restitution to the victim of the offense, the public, or the victim and the public." *Id.* The sentence "shall be reasonably calculated to achieve the two overriding purposes of misdemeanor sentencing set forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar offenses committed by similar offenders." R.C. 2929.21(B).

**{¶41}** A court imposing a misdemeanor sentence "has discretion to determine the most effective way to achieve the purposes and principles of sentencing set forth in section 2929.21 of the Revised Code." R.C. 2929.22(A) (without creating an unnecessary burden on local government resources). In imposing a misdemeanor sentence, the court shall consider all of the following factors: (a) the nature and circumstances of the offense; (b) any circumstances surrounding the offender and the offense indicating a history of persistent criminal activity and substantial risk of recidivism; (c) any circumstances indicating the offender's history, character, and condition show a substantial risk of danger to others and conduct characterized by a pattern of repetitive, compulsive, or aggressive behavior with heedless indifference to consequences; (d) any victim characteristics influencing vulnerability or impacting the seriousness of the offense; (e) the general likelihood of recidivism; (f) any conditions traceable to military service contributing to the offense; and (g) any military service record. R.C. 2929.22(B)(1). The court can also consider other factors considered relevant to sentencing. R.C. 2929.22(B)(2).

{¶42} After stating a court shall consider the appropriateness of community control before imposing a jail term for a misdemeanor, R.C. 2929.22(C) states: "A court may impose the longest jail term authorized under section 2929.24 of the Revised Code only upon offenders who commit the worst forms of the offense or upon offenders whose conduct and response to prior sanctions for prior offenses demonstrate that the imposition of the longest jail term is necessary to deter the offender from committing a future crime." The maximum jail term for a fourth-degree misdemeanor is thirty days. R.C. 2929.24(A)(4). The maximum community control sanction is five years. R.C. 2929.25(A)(2).

{¶43} Pursuant to the misdemeanor community control statute, a court has two distinct options: (a) directly impose community control sanctions (which may be in addition to a jail term); or (b) impose a jail term, suspend it (or some of it), and place the offender on community control. R.C. 2929.25(A)(1). The court here chose the latter option, sentencing Appellant to thirty days in jail (with three days of jail time credit), suspending the remaining 27 days, and imposing two years of community control.

{¶44} Appellant argues the suspended part of the sentence constituted an abuse of discretion, claiming it was unjust and unfair and suggesting the court failed to consider the purposes and principles of misdemeanor sentencing. Although her sentence was suspended and community control was imposed, she argues the court was not warranted in sentencing her to a maximum jail term before suspending it. Relying on R.C. 2929.22(C), she claims this was not one of the "worst forms of the offense" or a case involving an offender "whose conduct and response to prior sanctions for prior offenses demonstrate that the imposition of the longest jail term is necessary to deter the offender from committing a future criminal offense."

{¶45} Initially, the state suggests Appellant's argument on a maximum sentence is "meaningless" due to the suspended nature of the sentence. It is noted R.C. 2929.24(H) states a court sentencing an offender to jail "retains jurisdiction over the offender and the jail term." The state emphasizes the imposition of a maximum suspended jail term is the standard means of giving a community control sentence "teeth" in case of a violation, pointing out the court would not be obligated to impose a maximum term or any jail term for a future violation. Appellant analogizes the situation to the right

to counsel attaching in misdemeanor cases where actual imprisonment is imposed and points out the right applies even to a suspended sentence. *See Alabama v. Shelton*, 535 U.S. 654, 661, 122 S.Ct. 1764, 152 L.Ed.2d 888 (2002); *City of Garfield Hts. v. Williams*, 8th Dist. Cuyahoga No. 102279, 2016-Ohio-381, ¶ 16-18 (community control with a suspended jail sentence is "the functional equivalent of the suspended sentence in *Shelton*").

**{¶46}** In any event, the state concludes the court did not abuse its discretion. Regarding the purposes and principles of misdemeanor sentencing, the state points out the court need not discuss the statutes or make findings regarding them on the record; it is presumed the court considered the sentencing statute absent an affirmative showing to the contrary. *Youngstown v. Cohen*, 7th Dist. Mahoning No. 07-MA-16, 2008-Ohio-1191, ¶ 83-85, citing *State v. Crable*, 7th Dist. No. 04 BE 17, 2004-Ohio-6812, ¶ 24. The trial court's sentencing entry cited R.C. 2929.21 and 2929.22 and said the court considered the purposes and principles of sentencing. At the sentencing hearing, the court explained its concerns about Appellant's continued obsession with the property. There is no affirmative showing the trial court failed to consider the purposes and principles of misdemeanor sentencing.

**{¶47}** Likewise, the maximum sentence provision does not require findings. R.C. 2929.22(C). In fact, "[t]his court and others have ruled the misdemeanor sentencing court is not bound by this provision to the extent it requires judicial fact-finding for a maximum sentence * * *." *State v. Faiola*, 7th Dist. Mahoning No. 21 MA 0094, 2022-Ohio-1126, fn. 3, citing *State v. Burley*, 2017-Ohio-378, 83 N.E.3d 322, ¶ 9 (7th Dist.). *See also State v. Brooks*, 7th Dist. No. 05 MA 31, 2006-Ohio-4610 (severing the maximum sentence criteria in division (C) of R.C. 2929.22), extending *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470.

**{¶48}** At any rate, the evidence presented at the bench trial could reasonably be viewed as qualifying as one of the worst forms of criminal trespass.[4] Appellant broke into a house by falsely telling a locksmith she locked herself out of her house. She moved

---

[4] Her conduct showed a maximum term was necessary to deter her from reoffending; as to a poor response to "prior sanctions for prior offenses," we note the Rules of Evidence do not apply to sentencing and the state's pretrial motion contained evidence of one prior misdemeanor with two probation violations.

herself and her children into the house from which she had been removed seven months earlier. At that time, she acknowledged to the deputy executing the writ that she would be subject to arrest if she returned. She was subsequently informed of this by law enforcement as she continued to make complaints about her situation. It is extremely concerning when a person who disapproves of the results of a civil proceeding takes criminal steps to attempt to undo court actions. This is especially true where the entire situation appeared manufactured by Appellant (from visiting the treasurer's attorney without mentioning any tenancy to the post-foreclosure-complaint lease she gave to the water department). As the imposition of a suspended thirty-day sentence (with two years of community control) was not an abuse of discretion, this assignment of error is overruled.

{¶49} For the foregoing reasons, Appellant's sentence is affirmed.


Waite, J., concurs.

Hanni, J., concurs.

[Cite as *State v. Hammonds*, 2023-Ohio-2985.]

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed.  Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

### <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**